## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*,<br><br>v.<br><br>ELVIN GONZALEZ,<br>*Defendant.* | No. 3:19-cr-00090 (VAB) |

### RULING AND ORDER ON MOTION FOR COMPASSIONATE RELEASE

Elvin Gonzalez ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mot. for Compassionate Release, ECF No. 47 (Oct. 2, 2020) ("Def.'s Mot."); Mem. in Suppl. of Mot. for Reduction of Sentence Under First Step Act: Compassionate Release, ECF No. 48 (Oct. 2, 2020) ("Def.'s Mem.").

The United States (the "Government") opposes his motion. Gov't Resp. to Def.'s Mot. to Reduce Sentence, ECF No. 54 (Nov. 6, 2020) ("Gov't Opp'n").

For the reasons set forth below, Mr. Gonzalez's motion for compassionate release is **GRANTED**.

Mr. Gonzalez's term of imprisonment is reduced to **TIME SERVED**, followed by a period of three (3) years of supervised release, to be served in home incarceration until his release date of **February 27, 2022**. Mr. Gonzalez shall be released from Bureau of Prisons custody by **December 3, 2020**, in accordance with the terms of this Order.

## I.      BACKGROUND

On April 3, 2019, a grand jury returned a one-count indictment against Mr. Gonzalez for unlawful possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Sealed Indictment, ECF No. 1 (Apr. 3, 2019).

On September 3, 2019, Mr. Gonzalez pled guilty to Count One of the Indictment. Plea Agreement, ECF No. 28 (Sept. 3, 2019).

On January 13, 2020, the Court sentenced Mr. Gonzalez to a term of imprisonment of 30 months, a term of three years of supervised release, and imposed a special assessment of $100. J., ECF No. 41 (Jan. 13, 2020).

On October 2, 2020, Mr. Gonzalez moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Def.'s Mot; Def.'s Mem.

On November 6, 2020, the Government opposed Mr. Gonzalez's motion. Gov't Opp'n.

On November 13, 2020, Mr. Gonzalez filed two supplemental memoranda in further support of his motion. *See* Suppl. Mem. in Suppl. of Mot., ECF No. 56 (Nov. 13, 2020) ("Def.'s Suppl. Mem."); Second Suppl. Mem. in Suppl. of Mot., ECF No. 57 (Nov. 13, 2020) ("Def.'s Second Suppl. Mem.").

That same day, the Court held a hearing by videoconference. Min. Entry, ECF No. 59 (Nov. 13, 2020).

On November 16, 2020, Mr. Gonzalez filed a third supplemental memorandum. Third Suppl. Mem. in Suppl. of Mot., ECF No. 58 (Nov. 16, 2020) ("Def.'s Third Suppl. Mem.").

## II.     STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons [("BOP")];" or (2) "upon

motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days.").

A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" release. 18 U.S.C. § 3582(c)(1)(A). In determining whether to grant a motion to modify a sentence, a court must also consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

## III. DISCUSSION

Section 3582(c)(1)(A) authorizes courts "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *see United States v. Gonzalez*, No. 3:15-cr-00223 (MPS), 2020 WL 5793304, at *1 (D. Conn. Sept. 29, 2020) (slip op.) ("[B]ecause [Mr.] Gonzalez – and not the [BOP] – brings the instant motion, [the Court is] not bound by the Sentencing Commission's outdated policy statement applicable to Section 3582(c)(1)(A) . . . , which the Second Circuit

recognized as only applying to motions for sentence reduction brought by the BOP.") (citing *Brooker*, 976 F.3d at 230) (internal citations omitted).

Mr. Gonzalez moves the Court to grant his motion for compassionate release because he is "dangerously obese," which, he argues, taken alongside the COVID-19 pandemic, constitutes an extraordinary and compelling circumstance warranting release. Def.'s Mem. at 1. He argues that "[t]he BOP simply does not have the virus under control," *id.* at 12, and that even at the time of filing there were no inmates currently testing positive for coronavirus at his institution, MDC Brooklyn, the number of inmates who "actually have the disease is unknown," *id.* at 14 (emphasis omitted).

He argues that he is entitled to release under the § 3553(a) factors because the Court could not at the time of sentencing contemplated "the COVID-19 pandemic and the serious risk it presents to a person in [Mr.] Gonzalez's condition and age." *Id.* at 20. He also notes that "he has been held at MDC Brooklyn," which "was not intended to house sentenced prisoners indefinitely," where prisoners "are locked down for 22-23 hours daily," "[t]here is no programming," and which "reportedly lacks a separate medical unit for ill inmates." *Id.* at 21-22. Finally, he argues that he is not a danger to the community because he "has no disciplinary infractions at all" during his time in prison, *id.* at 21, "he was on pretrial release for ten months without serious incident," *id.* at 23, and the underlying offense involved possession, not use, of a firearm, *id.*

The Government opposes Mr. Gonzalez's motion. The Government does not dispute whether Mr. Gonzalez has established an extraordinary and compelling reason for release, *see* Gov't Opp'n at 8, but rather opposes Mr. Gonzalez's release on § 3553(a) grounds, *see id.* at 8-10. In the Government's view, "Mr. Gonzalez unquestionably would pose a danger to public safety if released." *Id.* at 9. As the Government argues, Mr. Gonzalez's criminal history "clearly

distinguishes him as a danger to the community and a likely recidivist." The Government argues that Mr. Gonzalez's "body of work" – including previous prison sentences of "30 months, 30 months, one year and ten years" and repeated gun crimes – "clearly marks [him] as . . . a poor option for early release." *Id*. at 10.

The Court will address each of the relevant factors in turn.

### 1. Exhaustion

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.

The parties do not address the exhaustion requirement in their briefing, but the record shows that the exhaustion requirement has been met. *See* Def.'s Mem. at 25 (copy of the Response to an Inmate Request to Staff sent to Mr. Gonzalez from the MDC Brooklyn warden). Mr. Gonzalez submitted a compassionate release request to the Warden on June 18, 2020, a request denied on July 8, 2020. *Id*. As more than thirty days have passed since Mr. Gonzalez submitted his request to the Warden, the exhaustion requirement has been satisfied and Mr. Gonzalez's motion is properly before the Court.

### 2. Extraordinary and Compelling Reasons

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Delgado*, 457 F. Supp. 3d 85, 89 (D. Conn. Apr. 30, 2020) (granting

5

compassionate release where the defendant had a BMI of 40.2, finding that his "severe obesity and sleep apnea put him at increased risk should he contract COVID-19"); *United States v. Daugerdas*, -- F. Supp. 3d --, 2020 WL 2097653, at *3 (S.D.N.Y. 2020) (defendant serving a 180-month term of imprisonment and incarcerated at a facility with no reported cases of COVID-19; the district court found that his underlying health conditions—Type II diabetes, obesity, hypertension, and high cholesterol—and the risk of COVID-19 in prisons generally constituted an extraordinary and compelling reason, but did not ultimately grant compassionate release); *United States v. Morales*, No. 3:19-cr-121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (slip op.) (recognizing district courts have found that "[a]sthma is a condition that places a person at increased risk for serious complications, or even death, if the person contracts COVID-19[,]" and "creates a[n] extraordinary and compelling reason for sentence reduction"); *United States v. McCarthy*, 453 F. Supp. 3d 520, 527 (D. Conn. 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence.").

Mr. Gonzalez argues that he "has a serious known risk factor for an adverse result if he becomes infected with COVID-19," as "[c]urrent medical records show that [he] is obese." Def.'s Mem. at 18 (emphasis omitted). Mr. Gonzalez notes that his body mass index ("BMI") is "calculated at 35 percent; anything above 30 is considered obese." *Id*. He also argues that his age, at "nearly forty years old," adds additional risk. *Id*. Mr. Gonzalez cites no other pre-existing or other health conditions.

The Government does not dispute this point and concedes that because "Mr. Gonzalez's medical records show that he has a BMI over 30," it sees him as "eligible to seek compassionate release" Gov't Opp'n at 8.

As many courts in this District have recognized, the Centers for Disease Control and Prevention ("CDC") guidelines make clear that obesity places defendants at heightened risk of severe complications were they to contract COVID-19. *See, e.g.*, *United States v. Newton*, No. 3:18-cr-0022-8 (VLB), 2020 WL 6784267, at *5 (D. Conn. Nov. 18, 2020) ("The Court acknowledges that Mr. Newton's obesity, which is marginal, places him at a heightened risk of severe complications were he to contract the virus."); *United States v. Davila*, No. 16-cr-00185 (MPS), 2020 WL 6499562, at *2 (D. Conn. Nov. 5, 2020) ("As the Government concedes, . . . [the defendant's] obesity places him at increased risk of severe illness from COVID-19 under the CDC guidelines."); *see also People With Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Nov. 2, 2020) (listing "obesity (body mass index [BMI] of 30 kg/m2 or higher but < 40 kg/m2)" as a condition that puts "[a]dults of any age . . . at increased risk of severe illness from the virus that causes COVID-19.").

As a result, obesity, taken alone, may constitute an extraordinary and compelling reason for release. *See United States v. Bruno*, No. 18-cr-00061 (VAB), ECF No. 137 (D. Conn. Aug. 3, 2020). Other courts across the Second Circuit, and district courts elsewhere throughout the country, have similarly found that obesity alone may satisfy the extraordinary and compelling prong of the compassionate release inquiry. *See, e.g.*, *United States v. Dasilva*, No. 15-cr-95 (AJN), 2020 WL 5764286 at *2 (S.D.N.Y. Sept. 28, 2020) (slip op.) ("Mr. Dasilva's obesity alone suffices to satisfy the first prong of the analysis, even without reaching Mr. Dasilva's other health

conditions."); *United States v. Dawson*, No. 18-40085 (HLT), 2020 WL 1812270, at *5 (D. Kan. Apr. 9, 2020) ("The court finds that [the defendant] has established that his obesity puts him at an increased risk for severe illness if he were to contract COVID-19, which weighs in favor of finding exceptional reasons."); *United States v. Brown*, No. ELH-01-377, 2020 WL 5747194, at *8 (D. Md. Sept. 25, 2020) (mem.) (noting that "numerous courts have found that, in light of the COVID-19 pandemic, severe obesity, and in particular a BMI above 30, qualifies as a compelling reason for compassionate release," and collecting cases).

Courts in this Circuit, however, are divided as to whether obesity may constitute an extraordinary and compelling reason warranting compassionate release where no other medical conditions are alleged, "especially [where] there was no indication that obesity was not being handled adequately at the inmate's institution." *United States v. Colon*, No. 3:97-cr-48 (SRU), 2020 WL 6049215, at *6 (D. Conn. Oct. 12, 2020) (slip op.); *compare Bruno*, No. 18-cr-00061 (D. Conn. Aug. 3, 2020); *Dasilva*, 2020 WL 5764286, at *2; *with United States v. Vadakin*, No. 3:9-cr-010 (JBA), 2020 WL 4818440, at *4 (D. Conn. Aug. 17, 2020) (slip op.) (denying compassionate release where, "[w]hile Defendant's obesity does increase his risk of severe illness, it is unclear if he has any other compromising conditions that would predispose him to significant risk"); *United States v. Kerrigan*, No. 16-cr-576 (JFK), 2020 WL 2488269, at *3 (S.D.N.Y. May 14, 2020) (defendant failed to articulate an extraordinary and compelling reason where he was "significantly younger than 65 years old, and while obesity . . . may indicate 'high risk' according to the CDC, none of the other medical issues [asserted] indicate that he suffers from other primary risk factors looked to by courts, such as asthma, diabetes, or immunocompromization").

In both *Bruno* and *Dasilva*, the Government did not dispute the defendants' contentions that obesity constituted an extraordinary and compelling reason for release. *See Bruno*, No. 18-cr-

00061 (VAB), ECF No. 137, at 6 (noting that the Government "declin[ed] to argue that obesity does not constitute an extraordinary and compelling reason, and instead rel[ied] on its arguments relating to the Section 3553(a) factors."); *Dasilva*, 2020 WL 5764286, at *2 ("[T]he Government agrees that [Mr.] Dasilva's obesity satisfies the extraordinary and compelling reason component of the analysis." (alteration in original)). Here, like *Bruno*, the Government does not dispute whether Mr. Gonzalez has set forth extraordinary and compelling reasons; rather, the Government concedes that "Mr. Gonzalez's medical condition exposes him to an increased risk of COVID[-19], and thus presents [an] [extraordinary and compelling reason[]" for release. Gov't Opp'n at 1 (third alteration in original) (internal quotation marks omitted).

Additionally, "in determining whether 'extraordinary and compelling reasons' warrant a prisoner's early release, courts routinely consider the status of coronavirus infections at the particular institution where the defendant is housed." *Colon*, 2020 WL 6049215, at *7 (collecting cases). Mr. Gonzalez states that the "BOP claims that three staff at MDC Brooklyn but no inmates" were positive for coronavirus at the time of filing, Def.'s Mem. at 14, although he argues that this is due to a low testing rate there, *id*. The Government responds that "as of November 5, 2020, MDC Brooklyn has two active cases of infection among the inmates and three active cases among staff," Gov't Opp'n at 6, numbers which are "not so grave as to warrant early release to an inmate with such a dangerous history," *id*. at 10. As of November 30, 2020, MDC Brooklyn had one active inmate case and eight active staff cases. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (last visited Nov. 30, 2020).

While these statistics indicate that the risk of contracting COVID-10 at MDC Brooklyn may currently be low, given Mr. Gonzalez's underlying health, he will face severe health issues if he contracts the virus. *See United States v Dufresne*, No. 16-cr-75-1-PB, 2020 WL 5803224, at *2

(D.N.H. Sept. 29, 2020) (granting compassionate release where "[a]lthough the generalized risk of contracting COVID-19 at MDC Brooklyn remains low, the risk specific to [the defendant] based on his current health conditions is high, and the potential health ramifications should he contract the virus are severe.").

Accordingly, because Mr. Gonzalez has established that his obesity alone may constitute an extraordinary and compelling reason for release, and that his obesity increases the risk that he will experience severe illness should he contract COVID-19, Mr. Gonzalez has established an extraordinary and compelling reason for release and turns to the Section 3553(a) factors.

### 3. Section 3553(a) Factors

After establishing that extraordinary and compelling reasons exist, "Section 1B1.13 of the Guidelines further provides that a court may reduce a term of imprisonment only if the court determines that '[t]he defendant is not a danger to the safety of any other person or to the community[,]'[ ] and only after considering the factors listed in 18 U.S.C. [§] 3553(a)." *McCarthy*, 453 F. Supp. 3d at 526.

Mr. Gonzalez argues that "the overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents to a person [of] [Mr.] Gonzalez's condition and age." Def.'s Mem. at 20. He argues that the "conditions [at MDC Brooklyn] have been extraordinarily difficult" since the COVID-19 pandemic began, as programming has stopped, "inmates are locked down for 22-23 hours daily," and his facility "reportedly lacks a separate medical unit for ill inmates." *Id.* at 21-22. As Mr. Gonzalez points out, "MDC Brooklyn was not intended to house sentenced prisoners indefinitely." *Id.* at 22.

With respect to whether he poses a danger to the community, he argues release is warranted because he has "reportedly has had no disciplinary infractions at all" during his current term in

prison, *id.* at 21; "he was on pretrial release for ten months without serious incident, . . . which is powerful evidence that he is not a danger to the community," *id.* at 23 (internal citation omitted); and his underlying offense concerned possession, not brandishing or using, a firearm, *id.*

As Mr. Gonzalez argues, "the question before the Court is whether ordering [him] to spend an additional sixteen months in prison or a halfway house, on top of the time that he has already served, will help if the goal is his successful reintegration into society." *Id.* at 23. He suggests that "after this time in prison under very harsh conditions, and his time on pretrial release with a successful track record there, structured supervision will be enough." *Id.* (citing *United States v. Holmes*, No. 19-cr-87 (VAB), 2020 WL 4355118, at *4 (D. Conn. June 3, 2020) (slip op.)). He argues that his proposed release will come with mental health treatment, which "will help if the goal is his successful reintegration into society." *Id.* Finally, he sets forth in his supplemental memoranda a release plan that proposes release to home confinement with his fiancée, Samantha Kelly, who is the manager for a group home, *see* Def.'s Second Suppl. Mem. at 1, and continued mental health treatment with a counselor who treated him during his pretrial release period, *see* Def.'s Third Suppl. Mem.

The Government argues that Mr. Gonzalez's criminal history, combined with multiple prior disciplinary infractions while incarcerated and the severity of his underlying crimes, makes him an inappropriate candidate for release. Gov't Opp'n at 8-10. As the Government notes, Mr. Gonzalez has a criminal history dating back to 2000, including convictions for offenses including the sale of hallucinogens and narcotics, the failure to appear, escape in the first degree, and possession of a stolen firearm, offenses for which he served multiple prison terms. *Id.* The Government notes that during his time in federal custody, Mr. Gonzalez incurred "approximately nine disciplinary incidents" that resulted in numerous and lengthy penalties, *id.* at 9, and that Mr.

Gonzalez has previously escaped halfway houses to which he was released and "ignored the rules in a community placement." *Id.* at 9-10. Finally, the Government notes that Mr. Gonzalez previously served a ten-year federal sentence for a gun crime and completed "the very same gun offense" eighteen months after his term of supervised release for that crime. *Id.* at 10. Accordingly, in the Government's view, "Mr. Gonzalez has not met his burden of establishing that he does not pose a risk of danger to the safety of the community, and the sentencing factors . . . continue to weigh heavily against release." *Id.* at 1.

On balance – though the Court views the decision as very close – the Court disagrees.

"Courts have found during the coronavirus pandemic that, even where an individual has medical conditions which make him vulnerable to COVID-19, the individual's danger to the community may ultimately outweigh any health concerns and the balance of factors would weigh against release." *United States v. Belle*, 457 F. Supp. 3d 134, 140 (D. Conn. May 5, 2020) (collecting cases).

The Court recognizes Mr. Gonzalez's "significant prior criminal history," including "numerous offenses" committed "while under previously imposed criminal justice sentences." PSR ¶ 118. Because the "nature and circumstances" of Mr. Gonzalez's crimes, both his crime of conviction and those previously committed, are "undoubtedly serious, [this] may weigh against granting compassionate release." *United States v. De La Cruz*, No. 3:17-cr-150 (VAB), 2020 WL 6193891, at *6 (D. Conn. Oct. 22, 2020) (slip op.) (quoting *United States v. Goins*, No. 11-cr-20376, 2020 WL 3064452, at *6 (E.D. Mich. June 9, 2020)). The Court also recognizes that previously in BOP custody, Mr. Gonzalez received numerous disciplinary citations, *see* PSR. ¶ 49, and while in the custody of the Connecticut Department of Correction, received numerous disciplinary tickets, *see id.* ¶ 51.

Other factors, however, weigh in favor of release, even if ever so slightly.

Mr. Gonzalez has been on "pretrial release for ten months without serious incident," Def.'s Mem. at 23 (citing PSR ¶¶ 4-5), and has had no disciplinary infractions during his time at MDC Brooklyn, *id.* at 21, neither of which is disputed by the Government. Thus, his most recent actions indicate a "recent positive behavioral trend." *United States v. Johnson*, No. 3:18-cr-162 (MPS), 2020 WL 4449797, at *4 (D. Conn. Aug. 3, 2020) (granting compassionate release where the defendant had "not had any disciplinary incidents at Wyatt or in BOP custody" despite a lengthy criminal history); *United States v. Pena*, 459 F. Supp. 3d 544, 552 (D. Conn. 2020) (granting compassionate release where the defendant's "conduct since the crime," including "compli[ance] with the requirements of home detention and electronic monitoring" and having "not received a *single* disciplinary infraction while in custody over the past five years," helped "convince the Court . . . that he does not now pose a danger to the community").

Mr. Gonzalez also is eligible for release on February 27, 2022, but would be eligible for a halfway house release sooner, perhaps as early as August 2021, and therefore may have less than a year of time in incarceration remaining on his sentence. *See* Gov't Opp'n at 1, Def.'s Mem. at 2. *See De La Cruz*, 2020 WL 6193891, at *6 (citing *United States v. Morales*, No. 3:12-cr-164 (JBA), 2020 WL 5369198, at *6 (D. Conn. Sept. 8, 2020) (slip op.) (granting compassionate release to a defendant who had served over half of his prison sentence)).

Moreover, at MDC Brooklyn, a BOP holdover facility, as described by Mr. Gonzalez, and not disputed by the Government, "[i]nmates are locked down for 22-23 hours daily" and "there is no programming." *See* Def.'s Mem. at 21. This absence of programming is problematic, given Mr. Gonzalez's demonstrated need for "intensive mental health treatment," which he does not appear to be receiving now at MDC Brooklyn. *Id.* at 22 (citing PSR ¶ 123 (suggesting Mr. Gonzalez

13

participate in the "Mental Health Step Down Unit Program – a residential treatment program offering an intermediate level of care for inmates with serious mental illness" and the "Resolve Program – a cognitive-behavioral program designed to address the trauma[-]related mental health needs of inmates" while incarcerated)).

And there is no indication in the record of when, if ever, Mr. Gonzalez will be transferred to a facility to receive this necessary mental-health treatment. *See United States v. Rosario*, No. 09-cr-415 (VEC), 2020 WL 3100461, at *2 (D. Conn. June 11, 2020) (slip op.) ("BOP has reported that it has no clear plans yet for transferring inmates like [the defendant] (*i.e.*, sentenced inmates who are not designated to MDC Brooklyn) to their designated facilities.").

While not at all preferable, the challenging circumstances of the day (a raging pandemic and serious health risks to an inmate), and the absence of meaningful programming for possibly the duration of the term of incarceration make release the lesser of two undesirable options. Mr. Gonzalez has provided a viable release plan that will provide support and necessary mental-health treatment. *See* Def.'s Second Suppl. Mem., Def.'s Third Suppl. Mem. He also proposes to serve his remaining sentence in home confinement with his fiancé, who is the manager for a group home and has known Mr. Gonzalez for five years. Def.'s Second Suppl. Mem. at 1. Mr. Gonzalez further has proposed that if released to home confinement, he will return to mental health counseling with the licensed professional counselor who treated him while on pretrial release in this case. *See* Def.'s Third Suppl. Mem.

Therefore, "[a]lthough his criminal history suggests that there is no guarantee that Mr. [Gonzalez] will no longer be a danger to any other person or the community, the Court finds that the support [he] will have upon his release and the possible reinstatement of a . . . term of

incarceration for a violation of conditions of supervised release, coupled with the threat of the coronavirus, provides a sufficient basis" to warrant release. *Holmes*, 2020 WL 4355118, at *4.

Accordingly, having considered all of these factors as well as those set forth in 18 U.S.C. § 3553(a), the Court concludes that they weigh in favor of immediate release.

## IV.   CONCLUSION

For the reasons explained above, the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **GRANTED**. Mr. Gonzalez's term of imprisonment is reduced to **TIME SERVED**.

It is **ORDERED** that Mr. Gonzalez be released from Bureau of Prisons custody by **December 3, 2020**, to begin his three-year term of supervised release, to be served on home incarceration at the home of Samantha Kelly, monitored by technology deemed appropriate by the U.S. Probation Office, until his release date on February 27, 2022. All other conditions of release from his January 13, 2020 judgment shall remain in effect, including but not limited to resuming mental-health counseling, as directed by the U.S. Probation Office.

Upon release, Mr. Gonzalez shall self-quarantine for fourteen (14) days. He also must contact his physician to determine whether he is a candidate for testing for COVID-19. If his medical provider determines that he needs to be tested, he must comply with that testing. If the test is positive, he shall promptly report that result to the Bureau of Prisons.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of November, 2020.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge